IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| J. WILDERMAN AUTOPLEX CORPORATION, an Illinois corporation, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>DERRICK SPENCER NORTON, )<br>)<br>Defendant ) | <br><br><br><br>Case No.: **3:09-cv-00154-PMF** |
| DERRICK SPENCER NORTON, )<br>)<br>Counter-Claimant, )<br>vs. )<br>)<br>J. WILDERMAN AUTOPLEX )<br>CORPORATION, )<br>)<br>Counter-Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**FRAZIER, Magistrate Judge:**

On February 9, 2009, Plaintiff/Counter-Defendant J. Wilderman Autoplex Corporation ("Wilderman") filed suit for declaratory judgment against Defendant/Counter-Claimant Derrick Spencer Norton ("Norton") in the Circuit Court of Wabash County, Illinois in order to determine its rights under an employment contract entered into by the parties. After removing that action to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §§ 1441 and 1446, Norton filed a counterclaim against Wilderman alleging that Wilderman breached the parties' employment contract when it orally terminated Norton on January 5, 2009, and when Wilderman failed to compensate Norton in accordance with the contract. Wilderman raised the affirmative defense that Norton had waived the alleged contract breaches when he accepted a payment of $6,000 after being orally terminated on January 5, 2009. After ruling on

1

the declaratory judgment counts in a July 22, 2010 Memorandum and Order, a bench trial ensued on November 8, 2010. The following findings of fact and conclusions of law are made pursuant to Fed. R. Civ. P. 52(a)(1):

## FINDINGS OF FACT[1]

1. James J. Wilderman ("Mr. Wilderman"), the majority shareholder of Wilderman, hired Norton in September, 2006 as a member of the Wilderman staff.

2. On January 1, 2008, Wilderman and Norton entered into an employment contract that installed Norton as General Manager and Chief Operating Officer of Wilderman. The contract provided that it could only be amended, supplemented, cancelled, or discharged by written instrument.

3. The contract provided that Norton would be employed by Wilderman for a period of ten years, and that the contract would automatically be renewed for an additional period of one year each year thereafter. Notwithstanding the foregoing provisions, Norton's employment could be terminated (1) upon Norton's death, (2) at either party's option on at least 30 days prior written notice, (3) by Wilderman for cause; or (4) due to a disability by Norton.

4. Norton was entitled to a 7% commission of all gross profits of Wilderman's main store, and its annex store in Olney, Illinois. Additionally, Norton was entitled to a base salary of $1,500.00 per week, to be drawn against any commissions earned.

5. Norton would be entitled to purchase common stock in Wilderman at the end of the ten year term if certain income benchmarks were met, but if Norton's employment with Wilderman terminated prior to the end of the ten year period, no such right would vest.

---

[1] Any evidence presented at trial that does not appear below has been determined to be inadmissible under either the Federal Rules of Civil Procedure or the Federal Rules of Evidence, or unpersuasive.

6. Mr. Wilderman and Mark R. Ide had the option, but were not required, to sell Norton real estate on which Wilderman operated.

7. During Norton's term of employment, he was entitled to (1) the use of a current year automobile owned or leased by Wilderman, with all expenses being paid by Wilderman; (2) 21 days of vacation each year, during which his compensation was to accrue according to the compensation provisions of the contract; and (3) participate in any retirement, health, life insurance, disability and other related benefit plans.

8. On January 5, 2009, Mr. Wilderman informed Norton during a telephone conversation that he was terminating Norton's employment with Wilderman.

9. In a second telephone conversation with Norton, Mr. Wilderman informed Norton that he would be compensated for the first week's draw of January, 2009, the December, 2008 commission, and the three weeks of vacation pay he was entitled to during 2009. During this conversation, Norton never acknowledged that he was waiving his rights under the contract by accepting this payment.

10. Sometime on or after January 7, 2009, Norton received his final paycheck from Wilderman. Norton was paid $1,500.00 as his base salary for work performed between January 1, 2009 and January 7, 2009, and $4,500.00 for 120 hours of vacation pay. Along with his federal and state income tax, Medicare, and federal insurance contribution deductions, $190.03 was deducted from this paycheck for health and dental insurance benefits.

11. On January 19, 2009, an attorney representing Norton sent a letter to Wilderman stating that the employment contract did not allow for oral termination, that he did not believe

that Norton's employment could be terminated on 30 days written notice, and that Norton was entitled to stock options, real estate, automobile use, and health insurance benefits.

12. Norton's attorney sent a second letter on January 19, 2009 to Wilderman demanding payment of $13,341.46 as compensation for Norton's weekly draws and commissions, and reaffirming that Norton was entitled to stock options, insurance, and other benefits.

13. On January 20, 2009, an attorney representing Wilderman sent a letter to Norton's attorney acknowledging that Wilderman had not previously terminated Norton's employment through written notice. That same day, Norton was provided with written notice that his employment with Wilderman would end 30 days after the date of the letter. The letter further stated that Wilderman expected to pay Norton under the terms and conditions of the contract until 30 days after the date of the letter. Nowhere in the letter was an indication that by accepting this payment, Norton was waiving his rights under the contract.

14. 30 days following January 20, 2009 was February 21, 2009.

15. On January 22, 2009, Norton received a letter from MedBen – a representative of Princeton Auto Plaza, Inc. in the administration of their COBRA requirements – which stated that Norton's previous health benefits with Wilderman had terminated as of January 5, 2009.

16. On February 6, 2009, Norton's attorney sent Wilderman's attorney a letter indicating that Norton would be willing to accept $22,777.45 for Wilderman's failure to pay Norton his wages and related compensation, plus the sum of $250,000.00 in settlement of Norton's additional claims. If Wilderman refused to accept these terms, Norton would initiate litigation against Wilderman.

17. On February 9, 2009, Wilderman filed suit for declaratory judgment against Norton in the Circuit Court of Wabash County, Illinois seeking to determine its rights under the employment contract.

18. After removing that action to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §§ 1441 and 1446, Norton filed a counterclaim against Wilderman alleging that Wilderman breached the parties' employment contract by orally terminating Norton.

19. As of the date of trial, Norton has not been paid his December, 2008, January, 2009, and February, 2009 commissions, or the $1,500.00 weekly draws for the 6 weeks and 3 days between January 7, 2009 and February 21, 2009.

20. During the month of December, 2008, Norton earned a commission in the amount of $751.79.

21. During the month of January, 2009, Norton would have earned a commission in the amount of $7,626.58.

22. During the first 21 days of February, 2009, Norton would have earned a commission in the amount of $9,154.40.

23. Norton's commission amounts between January 7, 2009 and February 21, 2009 were to be offset at a rate of $1,500.00 per week, or $9,642.86.

24. Norton still owes Wilderman $253.97 for work performed on a relative's automobile.

25. At all material times, Fed. R. Civ. P. 26(a)(3)(A)(iii) required each party to provide to the other at least 30 days before trial "…an identification of each document or other exhibit…the party expects to offer…[at trial]…and those it may offer if the need arises."

26. At all material times, Fed. R. Civ. P. 26(a)(1)(A)(iii) required each party to disclose at or within 14 days after a Fed. R. Civ. P. 26(f) conference "…a computation of each category of damages claimed by the disclosing party."

27. Norton failed to provide the calculation of any damages incurred by the loss of health, life insurance, or automobile benefits, or the identification of any exhibit he intended to provide at trial addressing these benefits until October 27, 2010, at the earliest.

## **CONCLUSIONS OF LAW**

In the Final Pretrial Order, the parties agreed that the following issues remained to be decided:

   a. Whether Wilderman breached its contract when it orally terminated Norton on January 5, 2009;

   b. Whether Norton waived his claim to recover amounts due under the contract;

   c. Which party is the prevailing party under the employment contract;

   d. The amount in attorney's fees the prevailing party is entitled to.

The first three remaining issues will be decided at this time, and the fourth remaining issue will be decided after the parties are given further opportunity to be heard.

1. "Whether a breach is material involves a determination of '"whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the nonbreaching party, whether custom and usage consider such a breach to be material, and whether the allowance of reciprocal non-performance by the nonbreaching party will result in his accrual of an unreasonable or unfair advantage."'" *Virendra S. Bisla, M.D., Ltd.,* 379 Ill.App.3d at 572-73, 318 Ill.Dec. 822, 884 N.E.2d 790, quoting *William Blair & Co. v. FI Liquidation Corp.,* 358 Ill.App.3d 324, 346-47, 294 Ill.Dec. 348, 830 N.E.2d

760 (2005), quoting *Sahadi v. Continental Illinois National Bank & Trust Co. of Chicago,* 706 F.2d 193, 196 (7th Cir.1983).

2. Only a "material" breach of a contract provision by one party will justify nonperformance by the other party. *Sahadi v. Continental Ill. Nat'l B.&T. Co. of Chicago,* 706 F.2d 193 (1983); *Janssen Bros. v. Northbrook T.&S. Bank,* 12 Ill.App.3d 840, 299 N.E.2d 431 (1973).

3. Norton alleges that Wilderman materially breached the contract when it orally terminated him on January 5, 2009 rather than providing written notice of termination. As stated above, Norton ceased coming to work for Wilderman after his January 5, 2009 conversation with Mr. Wilderman. This does not mean, however, that Norton was no longer employed by Wilderman. While the fact remains that Wilderman no longer desired to employ Norton, the notice of termination on January 5, 2009 was not effective, because it did not comply with the terms of the contract. When he entered into the contract, Norton expected to be employed as the General Manager and Chief Operating Officer of Wilderman. In exchange, Wilderman agreed to pay Norton for services rendered. Wilderman also retained the option to terminate Norton's employment without cause provided that Norton was given at least 30 days notice. By merely providing oral notice of termination, Wilderman did not actually terminate Norton's employment, despite the fact that Norton ceased coming to work. In fact, had Norton never received written notice of termination, it is possible that he could still be employed by Wilderman. While it is possible that Wilderman could have argued that Norton's failure to come to work after January 5, 2009 despite remaining employed by Wilderman constituted cause for immediate termination of his employment, Wilderman never raised such an argument,

7

and no evidence was presented that indicates that Wilderman ever attempted to terminate Norton for cause. Nonetheless, on January 20, 2009, Norton did receive written notice that his employment with Wilderman would terminate on February 21, 2009. Despite the fact that Norton failed to come to work after January 5, 2009, he was still entitled to compensation under the contract through that date.

4. Because Norton remained employed by Wilderman after the January 5, 2009 conversation with Mr. Wilderman, no breach of contract occurred by virtue of this conversation, which means that Wilderman retained the option to subsequently provide written notice of termination to Norton.

5. With respect to Wilderman's affirmative defense of waiver, "[a] party may waive a provision placed in a contract for its benefit by conduct establishing that it does not intend to insist on compliance with the provision." *Haake v. Board of Educ. for Tp High School Glenbard Dist 87*, 925 N.E.2d 297, 315-16 (Ill. App. 2010).

6. As established above, at no point did Norton indicate that by accepting the $1,500 payment for the first week's draw of January, 2009, or the $4,500 payment for 120 hours worth of vacation pay, he was waiving his rights under the contract.

7. There is no evidence, therefore, that Norton waived his rights to recover under the terms of the contract.

8. Because Wilderman was entitled to terminate Norton's employment on 30 days written notice in spite of the January 5, 2009 conversation between Norton and Mr. Wilderman, and because Norton did not waive his rights to recover under the contract, Norton is entitled to his December, 2008, January, 2009, and February, 2009 commissions. Wilderman is entitled to offset these commission amounts at a rate of $1,500.00 per week

for the 6 weeks and 3 days that lapsed between January 7, 2009 and February 21, 2009. Wilderman is also entitled to offset these commissions by the $253.97 due to Wilderman for auto maintenance performed for Norton.

9. Because Norton failed to provide Wilderman with a calculation of any damages incurred by the loss of health, life insurance, or automobile benefits, or the identification of any exhibit he intended to provide at trial addressing these benefits pursuant to Fed. R. Civ. P. 26(a)(3)(A)(iii) and Fed. R. Civ. P. 26(a)(1)(A)(iii), no evidence of these alleged damages will be considered, and no such damages will be awarded.

10. After offsetting Norton's commissions by his base salary of $1,500.00 per week for the 6 weeks and 3 days between January 7, 2009 and February 21, 2009 as well as the outstanding debt owed Wilderman by Norton of $253.97, it is determined that Norton is entitled to be paid **$7,635.94** by Wilderman.

11. In the United States, parties are ordinarily required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser. See *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975). Under this "American Rule," the general practice is not to award "fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States,* 511 U.S. 809, 819 (1994). Parties, of course, can take preemptive action, and contract for the award of attorney's fees *ex ante*, as was done in this case. Black's Law Dictionary 1154 (8th ed. 2004) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded…." The Supreme Court has defined "prevailing party" as a party who has obtained an "enforceable judgmen[t] on the merits" or a "court-ordered consent

decre[e]." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001).

12. Although this action was initiated when Wilderman filed a declaratory judgment action, it was previously determined that because the issues raised in that action were no longer in controversy, the only remaining claims were those for damages by Norton. Because Wilderman did, in fact, owe Norton for the outstanding commission amounts, and because Norton filed a counterclaim to recover these outstanding amounts, Norton has obtained an "enforceable judgment" against Wilderman, and is therefore entitled to recover attorney's fees under the contract as the prevailing party.

13. Norton shall submit an affidavit setting forth his demand for attorney's fees by December 9, 2010. Wilderman shall respond to this affidavit no more than 14 days after it is filed. If any additional information is needed from the parties, it shall be requested by separate order.

**SO ORDERED.**

**DATED: <u>November 19, 2010.</u>**

*/s/ Philip M. Frazier*
**HON. PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**
